UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| MORDECHAI AVISAR, et al., | CASE NO. 1:23-cv-01980 |
| Plaintiffs, | OPINION & ORDER |
| | [Resolving Doc. 12] |
| v. | |
| WEN-CHI CHEN, et al., | |
| Defendants, | |
| and | |
| SURGICAL THEATER, INC., | |
| Nominal Defendant. | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Plaintiffs Mordechai Avisar, Tai Liani, and James Domingo own shares of Nominal Defendant Surgical Theater, Inc. Plaintiffs bring this derivative suit on behalf of Surgical Theater against Defendant Wen-Chi Chen, alleging that Chen breached his fiduciary duties as a Surgical Theater board member. Plaintiffs also sue Defendants HTC Corporation and H.T.C. (B.V.I.) Corporation (HTC and BVI, respectively) for aiding and abetting Chen's alleged breach of duty.

Plaintiffs originally filed this lawsuit in state court, but Defendants removed the lawsuit to federal court based on diversity jurisdiction. Plaintiffs now move to remand this case back to state court. Plaintiffs argue that there is not complete diversity because Plaintiff Domingo and Nominal Defendant Surgical Theater are both Ohio residents. Plaintiffs also ask for attorneys' fees.

Case No. 1:23-cv-01980
GWIN, J.

Defendants oppose. Defendants say that Surgical Theater should be aligned as a plaintiff for diversity purposes, and that doing so creates complete diversity.

Based on the complaint and notice of removal, the Court finds that Surgical Theater is not antagonistic to Plaintiffs' claims, so Surgical Theater is properly aligned as a plaintiff for diversity purposes. Therefore, the Court **DENIES** Plaintiffs' motion to remand and **DENIES** Plaintiffs' request for attorneys' fees.

## I. BACKGROUND

Nominal Defendant Surgical Theater operates as a medical technology company that makes surgical virtual reality platforms.[1] These platforms allow surgeons to preview and prepare for complex procedures.[2]

Plaintiff Avisar co-founded Surgical Theater and helped to develop Surgical Theater's core technology.[3] From Surgical Theater's founding until 2022, Avisar served as Surgical Theater's CEO.[4] Avisar is also a current Surgical Theater board member.[5]

In 2015, Avisar met Defendant Chen for the first time when Defendant HTC expressed interest in potentially investing in, or partnering with, Surgical Theater.[6] Avisar travelled to Taiwan to meet with HTC's representatives, including Defendant Chen.[7]

Discussions between HTC and Surgical Theater were successful, and HTC decided to invest in Surgical Theater through Defendant BVI. In exchange for about $10 million, BVI

---

[1] Doc. 1-2 at ¶ 2.
[2] *Id.*
[3] *Id.* at ¶¶ 18–20.
[4] *Id.* at ¶ 18.
[5] *Id.* at ¶ 7.
[6] *Id.* at ¶ 24.
[7] *Id.*

Case No. 1:23-cv-01980
GWIN, J.

received Surgical Theater equity, and Chen secured a position as Surgical Theater's "Chairman of the Company's Management."[8]

From there, Surgical Theater also entered into an exclusive distribution agreement with an HTC affiliate.[9] As part of the distribution agreement, Defendant HTC agreed to market Surgical Theater's products in Taiwan, Hong Kong, and China, paying Surgical Theater 55% of the net revenue.[10] The distribution agreement also contained a buyout option that allowed HTC to purchase Surgical Theater's Taiwan, Hong Kong, and China intellectual property within twelve months after receiving regulatory approvals.[11]

However, the HTC-Surgical Theater relationship went south shortly afterwards when HTC did not sell Surgical Theater products under the distribution agreement at the sales levels Surgical Theater anticipated. Plaintiffs say that Defendant Chen caused HTC's failure, directing HTC not to sell Surgical Theater products.[12] Responding, the Defendants say Surgical Theater's failure to obtain Chinese regulatory approvals caused the low Chinese sales.

Plaintiffs say Defendant Chen acted against Surgical Theater's interests in other ways as well. For example, Plaintiffs allege Chen was affiliated with a company that allegedly designed its microchips so that the Chinese government could use those microchips to spy on end users.[13] Plaintiffs claim that Chen refused to provide any explanation, and they claim that the potential Chinese connection cost Surgical Theater the opportunity to do business

---

[8] Doc. 1-2 at ¶¶ 27, 30.
[9] *Id.* at ¶ 33.
[10] *Id.* at ¶¶ 36–37.
[11] *Id.* at ¶ 35.
[12] *Id.* at ¶ 43.
[13] *Id.* at ¶¶ 71–72.

Case No. 1:23-cv-01980
GWIN, J.

with the Department of Defense.[14] Plaintiffs make the claim that the chip design issue could have exposed Surgical Theater to investigation by the Committee on Foreign Investment in the United States.[15]

Plaintiffs also claim that Chen proposed a convertible loan agreement to Surgical Theater that, from Plaintiffs' perspective, was unreasonably slanted in favor of Defendants Chen and HTC and against Surgical Theater.[16] Plaintiffs say that, at Chen's urging, the Surgical Theater board approved the convertible loan agreement.[17]

Plaintiffs say the HTC Defendants took actions to drive down Surgical Theater's value so that Chen could purchase Surgical Theater for far less than the company's worth.[18] For this reason, Plaintiffs sue Defendants Chen, HTC, and BVI.

## II. LEGAL STANDARD

A defendant may remove a civil case from state to federal court if federal law gives the federal court original jurisdiction over that case.[19] However, if the federal court later concludes that it lacks subject matter jurisdiction, the federal court must remand the case back to state court.[20]

On a motion to remand, courts look to the pleadings—the complaint and the notice of removal—to determine jurisdiction.[21] The party defending removal has the burden of showing that the court has original jurisdiction.[22] In considering remand, courts "apply a test

---

[14] Doc. 1-2 at ¶¶ 74, 76–77.
[15] *Id.* at ¶ 87.
[16] *Id.* at ¶¶ 80–83.
[17] *Id.* at ¶ 84.
[18] *Id.* at ¶ 48.
[19] 28 U.S.C. § 1441(a).
[20] 28 U.S.C. § 1447(c).
[21] *Mays v. City of Flint*, 871 F.3d 437, 442 (6th Cir. 2017). In some cases, courts may consider evidence beyond the pleadings. But no party refers to outside evidence here.
[22] *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006).

Case No. 1:23-cv-01980
GWIN, J.

similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss."[23] As such, courts must "assume all facts set forth by Plaintiff[s] to be true,"[24] strictly construe the removal statutes, and resolve all doubts against removal.[25] Still, courts need not credit conclusory allegations as true.[26]

### III. DISCUSSION

#### A. Diversity Jurisdiction

Defendants base their removal on diversity jurisdiction.[27] In cases where there are U.S. citizens on both sides and additional foreign parties on any side, 28 U.S.C. § 1332(a)(3) controls whether federal courts have diversity jurisdiction. Section 1332(a)(3) requires there to be complete diversity among the U.S. citizens.[28]

But here, Plaintiff Domingo and Nominal Defendant Surgical Theater are both Ohio citizens.[29] As the parties are currently aligned—Plaintiffs Avisar, Liani, and Domingo against Defendants Chen, HTC, BVI, and Surgical Theater—the Court would not have jurisdiction.

Defendants, though, argue that the Court must look past how Plaintiffs aligned the parties when the Court assesses diversity.[30] Instead, the Court must align the parties according to the parties' real interests.[31] Defendants say that Nominal Defendant Surgical

---

[23] *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012). To the extent that Plaintiffs rely on non-binding district and out-of-circuit decisions to argue that state pleading standards apply on a motion to remand, Doc. 18 at 6–7, such argument is inconsistent with *Casias*. The Court applies the binding *Casias* standard.
[24] *Castanon v. U.S. Parcel Serv., Inc.*, 610 F. Supp. 3d 983, 985 (E.D. Mich. 2022) (citing *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 954 & n.7 (6th Cir. 2011)).
[25] *Mays*, 871 F.3d at 442 (quoting *Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007)).
[26] *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010)) (describing the Rule 12(b)(6) standard).
[27] Doc. 1 at ¶ 2.
[28] *Com. Union Ins. Co. v. Cannelton Indus., Inc.*, 154 F.R.D. 164, 169 (W.D. Mich. 1994); *see also Transure, Inc. v. Marsh & McLennan, Inc.*, 766 F.2d 1297, 1298–99 (9th Cir. 1985) (collecting cases).
[29] Doc. 1 at ¶¶ 7, 11.
[30] Doc. 15 at 7.
[31] *Safeco Ins. Co. of Am. v. City of White House*, 36 F.3d 540, 545 (6th Cir. 1994).

Case No. 1:23-cv-01980
GWIN, J.

Theater should be aligned as a plaintiff because Surgical Theater stands to benefit if Plaintiffs succeed on their derivative claims.[32]

Realigning Defendant Surgical Theater would put all the U.S. citizens on one side[33] and leave all the foreign citizens on the other side.[34] This would satisfy 28 U.S.C. § 1332(a)(2) and therefore give this Court subject matter jurisdiction.[35]

### B. Surgical Theater's Party Alignment

As explained above, the remand motion turns on whether Surgical Theater is properly aligned as a plaintiff or as a defendant.

In a shareholder derivative suit, the underlying company's alignment depends on whether the company, acting through its board of directors, is antagonistic to the claims that shareholders attempt to make on the company's behalf.[36] Antagonism is separate from the merits and does not require any showing of wrongdoing by the company's directors.[37] As long as the company is opposed to bringing the derivative claims, even if opposition is based on the directors' independent and sincere business judgments, the company is antagonistic for party alignment purposes.[38]

Determining antagonism is "a practical not a mechanical" exercise that requires courts to consider "the face of the pleadings and [] the nature of the controversy."[39] Specifically, courts look for the "principal purpose of the suit" and the "primary and controlling matter in

---

[32] Doc. 15 at 8.
[33] Doc. 1 at ¶¶ 5–7, 11.
[34] *Id.* at ¶¶ 8–10.
[35] *See U.S. Motors v. Gen. Motors Eur.*, 551 F.3d 420, 422–24 (6th Cir. 2008). There is no dispute over the amount in controversy, nor is there any reason to believe that the amount in controversy is less than required by the diversity statute. So, the Court does not further address the amount in controversy.
[36] *Smith v. Sperling*, 354 U.S. 91, 95–98 (1957).
[37] *Id.* at 95.
[38] *Id.* at 97.
[39] *Id.* at 96–97.

- 6 -

Case No. 1:23-cv-01980
GWIN, J.

dispute" when deciding alignment.[40] This means "that parties [must] be aligned in accordance with the *primary* dispute in the controversy, even where a different, legitimate dispute between the parties supports the original alignment."[41]

Antagonism can exist when a derivative suit accuses the company's board of misconduct, when board members have a close relationship with the target of the derivative suit, or when the board has an honest belief that it took the best course of action.[42] But these are just examples, and antagonism is not limited to these circumstances. Courts determine antagonism on a case-by-case basis by assessing the unique circumstances involved.[43]

In this case, the complaint does not show that Surgical Theater is antagonistic to Plaintiffs' claims.

Currently, Surgical Theater's board has seven directors, including Plaintiff Avisar and Defendant Chen.[44] Two of Surgical Theater's directors were appointed by HTC affiliates, allegedly at Chen's direction.[45] The remaining three directors are either Surgical Theater employees or shareholders with no clear connection to Chen other than their shared service as Surgical Theater directors.[46] Each director has one vote except for Avisar, who has two votes.[47]

Setting aside Defendants HTC and BVI, which are outside parties, Plaintiffs have sued only one Surgical Theater director: Defendant Chen. This action does not directly implicate the other six Surgical Theater directors.

---

[40] *City of Indianapolis v. Chase Nat. Bank*, 314 U.S. 63, 69 (1941) (citations omitted).
[41] *U.S. Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992) (emphasis added) (interpreting *City of Indianapolis* and collecting cases).
[42] *Smith*, 354 U.S. at 96.
[43] *See id.*
[44] Doc. 1-2 at ¶ 52.
[45] *Id.*
[46] *Id.* at ¶¶ 52, 118–26.
[47] *Id.* at ¶ 52.

Case No. 1:23-cv-01980
GWIN, J.

This action does not indirectly implicate the other six Surgical Theater directors either. The complaint largely avoids questioning the Surgical Theater board's decisions. Rather, the complaint primarily alleges that Chen took unilateral actions to lower Surgical Theater's value, such as by personally withholding funds or by using his individual influence over HTC to sabotage Surgical Theater's distribution agreement.[48] There is also no suggestion that the Surgical Theater board ever ratified Chen's unilateral actions.

That said, some of Plaintiffs' claims arguably challenge decisions that the Surgical Theater board approved. Namely, Plaintiffs allege that the Surgical Theater board should not have forced Plaintiff Avisar out as CEO and should not have approved the convertible loan agreement offered by Chen.[49] Some of the Surgical Theater directors also opposed investigating Chen's connection with the Taiwan microchip company that allegedly manufactured chips compromised by Chinese government spyware.[50]

However, the crux of Plaintiffs' claims focuses on Chen's individual actions, not the Surgical Theater board's actions. This case's primary dispute centers on what Chen did on his own or through his influence over HTC. So, while there may be some issues surrounding the Surgical Theater board's decision-making, the nature of this case is not one that the board seems antagonistic to.[51]

Recognizing this, Plaintiffs attempt to impute Chen's personal antagonism to all of Surgical Theater. To do so, Plaintiffs argue that Defendant Chen has effective control over

---

[48] Doc. 1-2 at ¶¶ 43, 59.
[49] *Id.* at ¶¶ 74–78, 80–84.
[50] *Id.* at ¶¶ 114, 117, 123, 126.
[51] *See Thomas Solvent*, 955 F.2d at 1089.

- 8 -

Case No. 1:23-cv-01980
GWIN, J.

Surgical Theater by virtue of his equity interests in Surgical Theater and the convertible loan agreement that he entered with Surgical Theater.[52] But this theory is flawed.

For one, the complaint never identifies how much Surgical Theater equity Chen owns, and the complaint does not identify Chen's voting share in Surgical Theater.

Likewise, while Plaintiffs allege that Defendant Chen received warrants to purchase Surgical Theater stock through a convertible loan agreement,[53] Plaintiffs never say how many warrants Chen received. Plaintiffs also do not allege that Chen ever exercised those warrants.

The allegations that Chen owns a large but unspecified amount of Surgical Theater stock, and that Chen holds a large but unspecified number of Surgical Theater warrants, do not support an inference that Chen controls Surgical Theater, even under the plaintiff-deferential standard for remand motions.

Nor does it help Plaintiffs to allege that the combination of all the warrants and stock held by Chen, HTC, and HTC affiliates represents a majority of Surgical Theater's stock.[54] Although Chen is an HTC director,[55] Plaintiffs do not allege facts showing that Chen so fully controls HTC and HTC's affiliates that he can wield HTC's ownership of Surgical Theater stock as if it were his own. Plaintiffs make only conclusory allegations about Chen's control over HTC[56] that are insufficient.

For similar reasons, Chen's Surgical Theater creditor status does not establish that Chen controls Surgical Theater. Chen is only one of multiple creditors who signed on to

---

[52] Doc. 12-1 at 11; Doc. 18 at 7.
[53] Doc. 1-2 at ¶ 80.
[54] *Id.* at ¶ 85.
[55] *Id.* at ¶ 11.
[56] *E.g., id.* at ¶¶ 34, 43.

Case No. 1:23-cv-01980
GWIN, J.

Surgical Theater's convertible loan agreement. The other creditors are HTC-affiliated entities that Plaintiffs have not sufficiently alleged are under Chen's control.

Finally, Plaintiffs say that Surgical Theater is antagonistic because at least a majority of the individual Surgical Theater directors are antagonistic due to Chen's influence over them. Chen himself is clearly opposed to these claims. Assuming that the two HTC-appointed directors are opposed as well,[57] three votes out of eight are antagonistic. Therefore, two more antagonistic votes would be needed to create a majority.

But none of the remaining Surgical Theater directors are antagonistic. Avisar obviously supports these derivative claims since he is a plaintiff in this lawsuit. And Avisar enjoys two board votes. As for the last three Surgical Theater directors, Plaintiffs argue that they are beholden to Chen because Chen can hold the directors' investments and Surgical Theater employment hostage through Chen's Surgical Theater stock and debt.[58]

The problems with this argument are familiar. Plaintiffs have not alleged that Chen himself controls a majority of Surgical Theater's shares. And there is also nothing in the complaint showing that Surgical Theater is fully dependent on Chen. The complaint never suggests that there are no other viable options, other than acquiescing to all of Chen's demands, that would allow Surgical Theater to survive.

For these reasons, the Court finds that Surgical Theater is not antagonistic to Plaintiffs' claims. Because Surgical Theater stands to benefit if Plaintiffs prevail, the Court aligns Surgical Theater as a plaintiff for diversity purposes[59] and finds that there is diversity jurisdiction.

---

[57] Doc. 1-2 at ¶¶ 114–17.
[58] *Id.* at ¶¶ 120, 122, 125.
[59] *Kable v. Trinity Fin. Corp.*, No. 07-cv-1131, 2008 WL 687225, at *3 (S.D. Ohio Mar. 11, 2008).

Case No. 1:23-cv-01980
GWIN, J.

### C. Attorneys' Fees

Absent "unusual circumstances," courts can award attorneys' fees in connection with a remand motion only when "the removing party lacked an objectively reasonable basis for seeking removal."[60] Because the Court finds that removal was appropriate and there are no unusual circumstances here, the Court **DENIES** attorneys' fees.

## IV. CONCLUSION

The Court **REALIGNS** Surgical Theater as a plaintiff, **DENIES** Plaintiffs' motion to remand, and **DENIES** Plaintiffs' request for attorneys' fees.

IT IS SO ORDERED.

Dated: February 2, 2024  　　　　　　　　　　　　　　　　　*s/　　James S. Gwin*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　JAMES S. GWIN
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[60] *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

- 11 -