UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| MORDECHAI AVISAR, et al., | : | CASE NO. 1:23-cv-01980 |
| | : | |
| Plaintiffs, | : | OPINION & ORDER |
| | : | [Resolving Doc. 20] |
| and | : | |
| | : | |
| SURGICAL THEATER, INC., | : | |
| | : | |
| Nominal Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WEN-CHI CHEN, et al., | : | |
| | : | |
| Defendants. | : | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Plaintiffs Mordechai Avisar, Tai Liani, and James Domingo bring this derivative suit on behalf of Nominal Plaintiff Surgical Theater, Inc.[1]  Plaintiffs sue Surgical Theater board member Wen-Chi Chen for violating fiduciary duties.  Plaintiffs say that Chen put his own self-interest above Surgical Theater's interests by, for example, loaning money to Surgical Theater on unfavorable terms and using his influence to interfere with Surgical Theater's Asian sales.  Plaintiffs also sue Defendants HTC Corporation and HTC (BVI) Corporation (HTC and BVI, respectively) for aiding and abetting Chen's alleged fiduciary duty breaches.

Defendants move to dismiss on multiple grounds: lack of personal jurisdiction, failure of service, failure to plead demand futility, and failure to state a claim.  The Court concludes that it lacks personal jurisdiction over Defendant HTC, and that Plaintiffs failed to make

---

[1] Plaintiffs originally named Surgical Theater as a nominal defendant, but the Court realigned Surgical Theater as a plaintiff. Doc. 31.

Case No. 1:23-cv-01980
GWIN, J.

proper service upon Defendant Chen. The Court also finds that Plaintiffs failed to sufficiently plead demand futility, so the Court does not reach Defendants' other failure-to-state-a-claim arguments. Therefore, the Court **GRANTS** Defendants' motion.

## I. BACKGROUND

This case stems from a dispute between Plaintiff Avisar and Defendant Chen—both Surgical Theater directors[2]—over Surgical Theater's business decisions.

In 2008, Plaintiff Avisar co-founded Surgical Theater.[3] Inspired by flight simulators, Avisar and his co-founder sought to develop a "surgery simulator" that would allow surgeons to rehearse complex procedures.[4] Avisar and his co-founder developed a simulator as Surgical Theater's first product.[5] Later, Surgical Theater expanded to produce other surgery-related systems.[6]

In 2015, Surgical Theater connected with Defendant HTC.[7] HTC invited Plaintiff Avisar to Taipei, where Avisar met with HTC representatives, including Defendant Chen (an HTC director).[8] Following the meetings, HTC invested in Surgical Theater through Defendant BVI, an HTC investment subsidiary.

On August 29, 2016, Surgical Theater and BVI entered into a purchase agreement that sold Surgical Theater preferred stock to BVI for nearly $10 million.[9] After Surgical Theater reorganized from an LLC to a corporation, BVI received the right to appoint two Surgical Theater board directors.[10]

---

[2] Doc. 1-2 at ¶¶ 7, 10.
[3] *Id.* at ¶ 18.
[4] *Id.* at ¶¶ 19–20.
[5] *Id.* at ¶ 20.
[6] *Id.* at ¶ 21.
[7] *Id.* at ¶ 24.
[8] *Id.* at ¶¶ 3, 24.
[9] *Id.* at ¶ 27.
[10] *Id.* at ¶¶ 50–52, 114, 116.

Case No. 1:23-cv-01980
GWIN, J.

About a year later, HTC and Surgical Theater expanded their relationship.  On June 27, 2017, HTC and Surgical Theater entered a distribution agreement.  The June 27, 2017 distribution agreement gave HTC the exclusive right to sell Surgical Theater products in various Asian countries.[11]  The distribution agreement also gave HTC a buyout option for Surgical Theater's intellectual property in those Asian countries.[12]

However, Plaintiffs allege that HTC broke the distribution agreement.[13]  According to Plaintiffs, Defendant Chen interfered to prevent HTC from selling Surgical Theater products.[14]  Although it seems illogical to try to depress sales in a company that Chen partially owned, Plaintiffs say that Chen did this to drive down Surgical Theater's value and make it possible for Chen to later purchase Surgical Theater for far less than it was worth.[15]

Plaintiffs claim that Chen also acted in other ways to further Chen's own interests at the expense of Surgical Theater's interests.  For example, Plaintiffs say that Chen and Surgical Theater's two BVI-appointed directors refused to acknowledge that HTC's intellectual property buyout option had expired because of a claimed failure to satisfy HTC's distribution obligations.[16]

Plaintiffs also say that Defendant Chen refused to honor previous representations that he would lend money to Surgical Theater.[17]  And when Chen ultimately set up a Surgical Theater loan, Plaintiffs say Chen made the loan terms unfavorable to Surgical Theater.[18]

---

[11] Doc. 1-2 at ¶ 33.
[12] *Id.* at ¶ 35.
[13] *Id.* at ¶ 43.
[14] *Id.* at ¶¶ 43, 48.
[15] *Id.* at ¶ 48.  More generally, property has no inherent "worth."  Instead, property has the value that a willing buyer operating without constraint will pay, and a willing seller operating without constraint will accept.
[16] *Id.* at ¶ 54.
[17] *Id.* at ¶ 59.
[18] *Id.* at ¶¶ 80–86.

Case No. 1:23-cv-01980
GWIN, J.

Finally, Chen allegedly refused to explain news reports suggesting that Chen's separately-owned company, VIA Technologies, Inc., had designed microchips to be vulnerable to Chinese government spyware.[19]  These reports also indicated that VIA had had to pay an arbitration award due to the defective microchips.[20]  Although Plaintiffs do not allege that Surgical Theater purchased or used any of the potentially vulnerable chips, Plaintiffs say chip problems at this Chen-affiliated but otherwise unrelated company could impact Surgical Theater sales.[21]

Plaintiffs say that Plaintiff Avisar confronted Chen about the VIA microchip spyware concern at a July 25, 2022 Surgical Theater board meeting.[22]  Neither Chen nor the other board members took any action.

Plaintiffs say that Chen's refusal to explain security concerns about the chips made by the unrelated Chen-associated company resulted in Surgical Theater losing a potential U.S. Department of Defense business relationship.[23]  And Plaintiffs allege that after Plaintiff Avisar confronted Chen about these issues, Chen used his influence over the Surgical Theater board to terminate Avisar as Surgical Theater's CEO.[24]

## II.     PERSONAL JURISDICTION

### A.  Legal Standard

When faced with a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "[t]he party seeking to assert personal jurisdiction bears the burden of demonstrating that

---

[19] Doc. 1-2 at ¶¶ 72–76.
[20] *Id.* at ¶ 71.
[21] *Id.*
[22] *Id.* at ¶ 74.
[23] *Id.* at ¶ 77
[24] *Id.* at ¶ 78.

Case No. 1:23-cv-01980
GWIN, J.

such jurisdiction exists."[25]  That party's burden can vary, however, depending on a court's procedural choices.

A court "may rely 'upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions.'"[26]  If the court does not conduct an evidentiary hearing, as is the case here, the party asserting jurisdiction "need make only a *prima facie* showing that personal jurisdiction exists."[27]

In evaluating a *prima facie* case, courts "consider pleadings and affidavits 'in a light most favorable to the plaintiff[s],' and do not weigh 'the controverting assertions of the party seeking dismissal.'"[28]

### B. Analysis

As a threshold matter, Plaintiffs argue that they were not required to plead personal jurisdiction in their complaint.  So, Plaintiffs say that Defendants cannot succeed on Defendants' Rule 12(b)(2) motion solely by attacking the pleadings.

Plaintiffs appear to be correct that they need not plead personal jurisdiction.[29]  But that does not relieve Plaintiffs from their burden to show personal jurisdiction.  The reason pleading personal jurisdiction is not necessary is because Plaintiffs can satisfy their burden

---

[25] *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (citation omitted).
[26] *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).
[27] *Id.* (citation omitted).
[28] *Id.* (quoting *Theunissen*, 935 F.2d at 1459).
[29] *Walker v. Concoby*, 79 F. Supp. 2d 827, 835 (N.D. Ohio 1999) (collecting cases); *Stirling Homex Corp. v. Homasote Co.*, 437 F.2d 87, 88 (2d Cir. 1971); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1206 (4th ed. 2023) ("Moreover, the complaint does not need to allege . . . the basis for jurisdiction over the defendant's person or property.).

Case No. 1:23-cv-01980
GWIN, J.

in other ways.   For example, Plaintiffs can submit affidavits instead of making allegations, or Plaintiffs can request jurisdictional discovery.[30]

In this instance, Plaintiffs have not given affidavits, have not sought jurisdictional discovery, and have not provided any other basis for personal jurisdiction beyond their pleading allegations.  The only way Plaintiffs can meet their *prima facie* burden is by relying on their pleading allegations.  Plaintiffs fail to meet their burden "if all the specific facts [which they] allege[] collectively fail to state a *prima facie* case."[31]

Making a *prima facie* case requires Plaintiffs to show that exercising personal jurisdiction would (1) satisfy Ohio's long-arm statute and (2) satisfy due process.[32]

Applying this test, the Court finds that personal jurisdiction over Defendants Chen and BVI is proper at this point. [33]  But Plaintiffs have failed to make a *prima facie* case for personal jurisdiction over Defendant HTC.

### 1.  Defendant Wen-Chi Chen

The Court begins with the Ohio long-arm statute.  The long-arm statute identifies nine grounds giving personal jurisdiction.[34]  As relevant here, one such ground gives personal jurisdiction over a party "transacting any business in [Ohio]" when the legal claims "aris[e]" from those transactions.[35]

---

[30] *See Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).
[31] *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).
[32] *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006).
[33] Because Defendants do not support their Rule 12(b)(2) motion with evidence or affidavits, Plaintiffs survive the Rule 12(b)(2) motion as long as they make a *prima facie* case.  *See Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (the burden shifts to defendants to support their motion with evidence after plaintiffs make a *prima facie* case).
[34] Ohio Rev. Code § 2307.382(A).  A relatively new section in the long-arm statute allows for personal jurisdiction "on any basis consistent with the Ohio Constitution and the United States Constitution."  Ohio Rev. Code § 2307.382(C).  Courts have not reached a consensus on whether this new language extends personal jurisdiction to due process limits or if the new language has more limited effect.  Regardless of how far § 2307.382(C) expands personal jurisdiction, though, the grounds in § 2307.382(A) continue to provide for personal jurisdiction.  Since the listed grounds in § 2307.382(A) resolve the personal jurisdiction questions here, the Court does not weigh in on § 2307.382(C).
[35] Ohio Rev. Code § 2307.382(A)(1).

- 6 -

Case No. 1:23-cv-01980
GWIN, J.

The "transacting business" requirement is extremely broad.  All that is required is for a party to "carry[] on business" or "hav[e] dealings" in Ohio.[36]  A party does not need to be physically present in Ohio to transact business in Ohio.[37]

Defendant Chen transacted business in Ohio as a Surgical Theater director.[38]  In his role as a director, Defendant Chen participated in Surgical Theater's corporate governance, including making significant decisions about how Surgical Theater responded to business challenges and opportunities.[39]  By participating in Surgical Theater's business decisions, Defendant Chen sufficiently "transacted business" within Ohio.

Plaintiffs' fiduciary duty claim against Defendant Chen arises from his role as director.  The "arising from" requirement is akin to proximate cause, requiring a close connection between Plaintiffs' claims and Defendant Chen's business transactions.[40]

Here, Plaintiffs' fiduciary duty claim stems from Chen's actions as a Surgical Theater director.  Many of the actions that Plaintiffs challenge are actions that Chen took as a Surgical Theater director.[41]

So, personal jurisdiction over Defendant Chen satisfies the Ohio long-arm statute.

The Court next turns to due process.  Courts can exercise personal jurisdiction over defendants that (1) purposefully avail themselves of the privilege of acting in the forum state, where (2) the claims against the defendants arise out of or relate to defendants' forum

---

[36] *St. Clairsville Pointe, Inc. v. Musilli,* 193 N.E.3d 1114, 1120 (Ohio Ct. App. 2022) (quoting *Hercules Tire & Rubber Co. v. Murphy,* 726 N.E.2d 1080, 1082 (Ohio Ct. App. 1999)).
[37] *Id.* (quoting *Hercules Tire,* 725 N.E.2d at 1082).
[38] Doc. 1-2 at ¶ 95.
[39] *E.g., id.* at ¶¶ 63, 67, 96–97.
[40] *Lexon Ins. Co. v. Devinshire Land Dev., LLC,* 573 F. App'x 427, 429 (6th Cir. 2014) (citing *Brunner,* 441 F.3d at 465–66).
[41] Doc. 1-2 at ¶ 130.

Case No. 1:23-cv-01980
GWIN, J.

contacts, and where (3) the defendants' forum contacts are substantial enough to make jurisdiction reasonable.[42]

Purposeful availment requires a defendant to "deliberately reach[] out beyond its home."[43]  The "defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."[44]  But the defendant's relationships are still relevant to personal jurisdiction.  Often, the "defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties."[45]

Here, Defendant Chen purposefully availed himself of an Ohio forum by agreeing to serve as a Surgical Theater director.[46]  While Chen's board membership is part of his relationship with Nominal Plaintiff Surgical Theater, that relationship is intertwined with Chen's substantive Ohio contacts.  As a Surgical Theater director, Chen controlled how the Ohio-based company conducted business, therefore "causing a consequence in [Ohio]" that constitutes purposeful availment.[47]

Plaintiffs' claims against Chen also arise out of Chen's relevant contacts.  Claims arise out of forum contacts when there is causation.[48]  And as the Court found when analyzing the Ohio long-arm statute, Plaintiffs' claims are caused by Chen's contacts.

Lastly, personal jurisdiction over Defendant Chen is reasonable.  Because the first two due process requirements are satisfied, there is a presumption that the reasonableness requirement is also satisfied.[49]

---

[42] *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 670 (6th Cir. 2023) (citations omitted).
[43] *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (internal quotation marks and citation omitted).
[44] *Walden v. Fiore*, 571 U.S. 277, 286 (2014).
[45] *Id.*
[46] Doc. 1-2 at ¶¶ 10, 30.
[47] *Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012) (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).
[48] *Ford*, 592 U.S. at 362.
[49] *Sullivan*, 79 F.4th at 674 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

Case No. 1:23-cv-01980
GWIN, J.

Chen's primary argument against reasonableness is that he is a foreign citizen.  But neither foreign citizenship nor foreign residency overcomes the reasonableness presumption.[50]

Chen also suggests that Ohio's interest in this case is diminished because the only Plaintiff to verify the complaint is not an Ohio resident.  However, Surgical Theater is an Ohio-based company.  And Ohio has enough interest in overseeing its own companies' governance that personal jurisdiction is reasonable.

Therefore, personal jurisdiction satisfies due process as well.

As a final argument, Defendant Chen says that even if personal jurisdiction is otherwise proper, the fiduciary shield doctrine prevents the Court from exercising jurisdiction over him.

"The fiduciary shield doctrine prevents individual officers of a corporation from being subject to personal jurisdiction in the forum state merely because the corporation is subject to such jurisdiction."[51]  But "the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants."[52]  When a corporate official "is actively and personally involved in the conduct giving rise to the claim," personal jurisdiction depends on the usual test that the Court applied above.[53]

Plaintiffs do not assert personal jurisdiction over Chen simply because Chen is a Surgical Theater director.  Rather, Plaintiffs allege that Chen was actively and personally

---

[50] *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 552 (6th Cir. 2016).
[51] *Commodigy OG Vegas Holdings LLC v. ADM Labs*, 417 F. Supp. 3d 912, 924 (N.D. Ohio 2019) (citing *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000)).
[52] *Balance Dynamics*, 204 F.3d 683, 698 (6th Cir. 2000).
[53] *Id.*

- 9 -

Case No. 1:23-cv-01980
GWIN, J.

involved in the Surgical Theater governance matters and decisions related to Plaintiffs'
fiduciary duty claims.[54]

So, the fiduciary shield does not apply.  Plaintiffs have established personal
jurisdiction over Defendant Chen at this stage.

### 2.  Defendant BVI

Defendant BVI's Ohio contacts mirror Defendant Chen's Ohio contacts.  So, the
above personal jurisdiction analysis applies to BVI.

Like Chen, BVI invested in Surgical Theater and participated in Surgical Theater's
governance by appointing two directors to Surgical Theater's board.[55]  And Plaintiffs' claims
against BVI mirror Plaintiffs' claims against Chen:  Plaintiffs say that BVI used its two board
seats to help Chen by having those two board members vote as Chen voted.[56]

BVI's actions to direct Surgical Theater satisfy the "transacting business" requirement,
and Plaintiffs' claims stem directly from those actions.[57]  BVI's actions are also purposeful
availment such that Plaintiffs' claims arise out of those actions and exercising personal
jurisdiction would be reasonable.[58]

Therefore, Plaintiffs have satisfied both Ohio's long-arm statute and due process.
Personal jurisdiction over BVI is appropriate at this stage.

### 3.  Defendant HTC

Plaintiffs' *prima facie* case for personal jurisdiction over HTC falters at the second due
process step.

---

[54] *See* Doc. 1-2 at ¶ 130.
[55] *Id.* at ¶¶ 27, 114, 116.
[56] *Id.* at ¶ 136.
[57] *See supra* Section II.B.1.
[58] *See id.*

Case No. 1:23-cv-01980
GWIN, J.

HTC's only alleged involvement with this case comes from the distribution agreement signed between HTC and Surgical Theater.[59]  Under the distribution agreement, HTC was supposed to sell Surgical Theater products in Asia.[60]  According to Plaintiffs, HTC did not sell sufficient Surgical Theater products.[61]

The distribution agreement and HTC's sales center in Asia.  At the same time, the complaint makes no allegation that HTC was involved in any case-relevant contact with Ohio.  Plaintiffs do not say that HTC and Surgical Theater negotiated the agreement in Ohio. And although HTC has relevant contact with an Ohio resident—Surgical Theater—"a defendant's relationship with a plaintiff . . . , standing alone, is an insufficient basis for jurisdiction."[62]

To the extent that HTC has any Ohio contacts, Plaintiffs have not alleged claims that arise out of or relate to those contacts.  So, the Court does not have personal jurisdiction over Defendant HTC and **DISMISSES** Defendant HTC.

### III.    SERVICE OF PROCESS

In addition to attacking the Court's personal jurisdiction, Defendant Chen also argues that Plaintiffs never properly served him.  Because Plaintiffs attempted to serve Chen before Defendants removed this case to federal court, state law applies to determine whether service was effective.[63]

---

[59] Doc. 1-2 at ¶ 33.  HTC's only direct contact with Surgical Theater was through the distribution agreement.  Any other relevant agreements between HTC and Surgical Theater were entered into between Surgical Theater and HTC affiliates, such as Defendant BVI, so they are not HTC's contacts.
[60] *Id.* at ¶ 36.
[61] *Id.* at ¶ 43.
[62] *Walden*, 571 U.S. at 286.
[63] *Thomas & Thomas Rodmakers, Inc. v. Sharpe's, Inc.*, No. 1:06-CV-421, 2007 WL 1057382, at *3 (S.D. Ohio Apr. 5, 2007) (citation omitted).

- 11 -

Case No. 1:23-cv-01980
GWIN, J.

Plaintiffs say that a presumption of proper service applies, and that Defendant Chen has failed to rebut that presumption.  But a service presumption arises only when "when any person at the *defendant's address* receive[s] the certified mail envelope" containing the required process.[64]

Put differently, courts presume proper service only when process is sent to an appropriate address.  Sending process to an address insufficiently related to the defendant is not effective service, nor does it generate a presumption of effective service.

In this case, Plaintiffs mailed process to a California office for VIA Technologies, Inc., a global company that Defendant Chen runs as CEO.[65]

Ohio law allows for service at an individual defendant's business address, but only if serving the business address is "reasonably calculated" to reach the individual defendant.[66] Where an individual did not maintain a regular office at a business address, visiting only two or three times per month, the Ohio Supreme Court found that service at that business address was improper.[67]

The facts here show that Defendant Chen visited VIA's California office even less that: only three to four times *per year*.[68]  Thus, VIA's California office is not a valid business address for serving Chen, and no service presumption arises.

Defendant Chen asks the Court to dismiss the claims against him due to this service failure.  However, "[t]he Sixth Circuit has expressed a preference to treat the first motion for

---

[64] *Progressive Direct Ins. Co. v. Williams*, 186 N.E.3d 337, 341 (Ohio Ct. App. 2022) (emphasis added) (citation omitted).
[65] Doc. 1-4; Doc. 20-4 at ¶¶ 3–4.
[66] *Akron-Canton Reg'l Airport Auth. v. Swinehart*, 406 N.E.2d 811, 814 (Ohio 1980).
[67] *Id.*
[68] Doc. 20-4 at ¶ 4.

Case No. 1:23-cv-01980
GWIN, J.

improper service as a motion to quash rather than a motion to dismiss."[69]  So, the Court

**QUASHES** service upon Defendant Chen.  The Court gives Plaintiffs **thirty (30) days** to perfect

service upon Chen.

## IV.    DEMAND FUTILITY

Defendants also move to dismiss the action for failure to plead demand futility as

required by Federal Rule of Civil Procedure 23.1.

### A.  Legal Standard

"In a shareholder derivative action, [Rule] 23.1 . . . requires that the plaintiff 'allege

with particularity' the reasons for failing to make a pre-suit demand."[70]  And courts "apply

the substantive law of the state of incorporation . . . to determine whether Plaintiffs' failure

to make a demand is excused."[71]

Surgical Theater incorporated in Delaware.[72]  So, the Court applies Delaware

substantive law and federal procedural law to its demand futility analysis.

Procedurally, the Sixth Circuit considers motions to dismiss for failure to allege

demand futility using the Rule 12(b)(6) standard.[73]  "To avoid dismissal under Rule 12(b)(6),

a plaintiff must allege facts that, when taken as true 'state a claim to relief that is plausible on

its face' and that 'rises above the speculative level.'"[74]

Substantively, "Delaware law recognizes that a shareholder may bring suit on a

corporation's behalf if he can establish 'either that the board wrongfully refused the plaintiff's

---

[69] *Baechel v. Republic Storage Sys., LLC*, No. 5:16-cv-1403, 2016 WL 7115947, at *2 (N.D. Ohio Dec. 7, 2016) (quoting *Price v. U.S. Postal Service*, No. 1:13-cv-1194, 2014 WL 3704286, at *3 (W.D. Mich. July 24, 2014)).

[70] *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 617 (6th Cir. 2008) (citing *McCall v. Scott*, 239 F. 3d 808 815 (6th Cir. 2001)).

[71] *Id.* (citing *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 108-109 (1991)).

[72] Doc. 1-2 at ¶ 13.

[73] *See, e.g.*, *In re Ferro Corp.*, 511 F.3d at 617.

[74] *Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403, 410 (6th Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (1955)).

Case No. 1:23-cv-01980
GWIN, J.

pre-suit demand to initiate the suit or, if no demand was made, that such a demand would [have been] a futile gesture and is therefore excused.'"[75]

Plaintiff Avisar chose not to make a pre-suit demand for Surgical Theater's board to challenge Defendants' actions.[76]  Therefore, the Court examines whether demand was "excused because there is a reasonable doubt that the directors could have properly responded to a demand," making demand futile.[77]

"The purpose of the demand-futility analysis is to assess whether the board should be deprived of its decision-making authority because there is reason to doubt that the directors would be able to bring their impartial business judgment to bear on a litigation demand."[78]

## B.  Analysis

To show demand futility under Delaware law, a plaintiff must allege particularized facts creating (1) a reasonable doubt whether the directors are disinterested and independent, or (2) a reasonable doubt whether that the challenged transaction was otherwise the product of the board's valid exercise of business judgment.[79]

Often, plaintiffs seek to plead demand futility under the first prong, by attacking directors' independence.  "When conducting [such] a demand futility analysis, a Delaware court proceeds on a claim-by-claim and director-by-director basis."[80]  If there is a reasonable

---

[75] *Davis v. Baier*, Case No. 3:20-cv-0929, 2023 WL 1073188, at *2 (M.D. Tenn. Jan. 27, 2023) (quoting *White v. Panic*, 783 A.2d 543, 550 (Del. 2001)).
[76] Doc. 1-2 at ¶ 112.
[77] *IBEW Local Union 481 Defined Contribution Plan & Tr. v. Winborne*, 301 A.3d 596, 617 (Del. Ch. 2023) (citing *United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1048 (Del. 2021)).
[78] *Zuckerberg*, 262 A.3d at 1059.
[79] *See Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984).
[80] *Winborne*, 301 A.3d at 618.

- 14 -

Case No. 1:23-cv-01980
GWIN, J.

doubt that less than half of the board votes are independent and disinterested, then demand is futile, and the case may proceed.[81]

Even with a controlling stockholder, the Court need examine whether the complaint plausibly alleges that a majority of the directors could not impartially respond to the demand.[82]

The Surgical Theater board has seven directors and eight available votes.[83] Plaintiff Avisar has two board votes. And the other directors have one vote each. So, Plaintiffs must plead particularized facts supporting a reasonable inference that at least four of the eight total votes from Surgical Theater's seven-person board could not act disinterestedly or independently on a demand.

"Disinterested 'means that directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally. . . . Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences.'"[84]

When alleging demand futility under the second prong by attacking the directors' business judgment, the requirements are much higher. Delaware law warns that courts "must take great care that this [prong] does not turn the presumption of business judgment on its head."[85]

---

[81] *Winborne*, 301 A.3d at 618 (citing *Zuckerberg*, 262 A.3d at 1059).
[82] *Kandell ex rel. FXCM, Inc. v. Niv*, No. CV 11812-VCG, 2017 WL 4334149, at *15 (Del. Ch. Sept. 29, 2017) ("[A]n allegation of controlling stock ownership does not raise, per se, a reasonable doubt as to the board's independence.") (quoting *Heineman v. Datapoint Corp.*, 611 A.2d 950, 955 (Del. 1992), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000)).
[83] Doc. 1-2 at ¶ 52.
[84] *Bakerman v. Sidney Frank Importing Co.*, No. CIV. A. 1844-N, 2006 WL 3927242, at *7 (Del. Ch. Oct. 10, 2006) (citation omitted).
[85] *In re INFOUSA, Inc. S'holders Litig.*, 953 A.2d 963, 972 (Del. Ch. 2007).

- 15 -

Case No. 1:23-cv-01980
GWIN, J.

To prevail under the second prong, a plaintiff must show that a business decision "*could not have been* a good faith exercise of business judgment" because no "rational business purpose" explains that decision.[86]

Plaintiffs have not alleged particularized facts showing that at least half of Surgical Theater's board votes are not independent or disinterested.  Nor have Plaintiffs alleged that any challenged business decisions were taken in bad faith.

The Court proceeds on a director-by-director basis.

### 1.  Plaintiff Mordechai Avisar

Plaintiff Avisar initiated this suit along with Plaintiffs Liani and Domingo.  So, Avisar's two board votes are independent and disinterested.

### 2.  Defendant Wen-Chi Chen

Defendant Chen allegedly acted against Surgical Theater's interests by interfering to prevent HTC from selling Surgical Theater products, by refusing to acknowledge that HTC's intellectual property buyout option expired, and by providing debt financing to Surgical Theater on arguably unfavorable terms.

Importantly, Chen is both a Surgical Theater director and an HTC director.[87]  As a dual fiduciary with duties to both Surgical Theater and Defendant HTC, Chen cannot disinterestedly consider a demand against HTC.[88]

Chen also stands on both sides of the debt financing agreement in this case—on one side as a Surgical Theater director and on the other as a Surgical Theater creditor.[89]  And

---

[86] *In re INFOUSA*, 953 A.2d at 972 (quoting *Sinclair Oil. Corp. v. Levien*, 280 A.2d 717, 720 (Del.1971)).
[87] Doc. 1-2 at ¶¶ 2–3.
[88] *In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 47 (Del. Ch. 2013) (a dual fiduciary who owes duties to two different companies has "an inherent conflict of interest" when the interests of those two companies diverge).
[89] Doc. 1-2 at ¶¶ 85, 95.

Case No. 1:23-cv-01980
GWIN, J.

Chen stands to benefit personally from this debt financing agreement in a way that other Surgical Theater stockholders will not.

Since "[d]irectors are interested if they 'appear on both sides of a transaction or expect to derive any personal financial benefit from it in the sense of self-dealing as opposed to a benefit which devolves upon the corporation or all stockholders generally,'"[90] Chen is also interested for this reason.

There is a reasonable doubt that Defendant Chen would have responded properly to a demand for a derivative action.

### 3.  Directors Praveen Gupta & Iming Pai

Plaintiffs have insufficiently alleged particularized facts that raise doubts whether either Gupta or Pai could independently consider Plaintiffs' demands.  Defendant HTC's subsidiary, BVI, appointed Gupta and Pai to the Surgical Theater board.[91]  But "challenges [to a director's] independence only by alleging that he was appointed by [one group of] stockholders and that he has voted with them in the past . . . . without more, are insufficient to demonstrate a lack of independence."[92]

As described, HTC and Surgical Theater entered a distribution agreement containing an Asian intellectual property buyout provision.  Without clear explanation why it mattered, Plaintiffs say they tried to have Surgical Theater claim the buyout provision had expired.[93]  Not surprisingly, HTC did not agree that its buyout option and exclusivity had expired.[94]

---

[90] *In re LNR Prop. Corp. S'holders Litig.*, 896 A.2d 169, 175 n.36 (Del. Ch. 2005) (quoting *Aronson*, 473 A.2d at 812).

[91] Doc. 1-2 at ¶¶ 114, 116.

[92] *Blaustein v. Lord Baltimore Cap. Corp.*, 84 A.3d 954, 958–59 (Del. 2014); *see also McElrath v. Kalanick*, 224 A.3d 982, 996 (Del. 2020) ("Thain was independent because the plaintiff does not allege that Thain had a personal or financial connection to Kalanick or that the directorship was of substantial material importance to him. . . . [A]ppointment to the board is an insufficient basis for challenging Thain's independence.").

[93] Doc. 1-2 at ¶ 54.

[94] *Id.* at ¶¶ 55–56.

Case No. 1:23-cv-01980
GWIN, J.

Gupta and Pai did not support the effort to have Surgical Theater claim expiration.[95]  Plaintiffs suggest that Gupta's and Pai's decisions not to support expiration shows that Gupta and Pai were interested.

In effect, Plaintiffs say Gupta's and Pai's decisions on the buyout expiration question are plainly undeserving of business judgment rule protection.  To draw this inference, the Plaintiffs must plead particularized facts sufficient to raise a reasonable doubt that the expiration decisions were "taken honestly and in good faith."[96]  That is, Plaintiffs need to plead facts amounting to corporate waste.

The Court finds that Plaintiffs fail to allege sufficient facts regarding Gupta and Pai to undercut the business judgment rule because Plaintiffs offer no support for why Gupta's and Pai's decisions could not have been taken in good faith.  So, there are insufficient allegations to doubt that either Gupta or Pai were independent and disinterested.

### 4.  Directors Bradley Sacks & Noam Lotan

Plaintiffs allege that Directors Sacks and Lotan are not independent for two primary reasons.

First, both invested in Surgical Theater.[97]  Plaintiffs say these investments may fail or underperform if Surgical Theater does poorly.

Plaintiffs allege that Defendant Chen intentionally caused Surgical Theater financial distress.  Plaintiffs say Chen did that so Chen could exercise more control over Surgical Theater by providing remedial financing when Surgical Theater was in dire straits.[98]

---

[95] Doc. 1-2 at ¶ 55.
[96] *In re Goldman Sachs Grp., Inc. S'holder Litig.,* No. 5215-VCG, 2011 WL 4826104, at *12 (Del. Ch. Oct. 12, 2011).
[97] Doc. 1-2 at ¶ 122, 125.
[98] *Id.* at ¶¶ 106–08.

Case No. 1:23-cv-01980
GWIN, J.

So, Plaintiffs say, Surgical Theater will do poorly unless the directors comply with Chen's wishes and secure Chen's financial assistance.  Plaintiffs argue that Sacks and Lotan (and all other directors) therefore become beholden to Chen.[99]

But Plaintiffs make no allegation that Surgical Theater used Chen financing when other cheaper financing was available.

A director is considered interested when, for example, "he will receive a personal financial benefit from a transaction that is not equally shared by the stockholders, or when a corporate decision will have a 'materially detrimental impact' on a director but not the corporation or its stockholders."[100]

By focusing on Sacks' and Lotan's financial interests in Surgical Theater, Plaintiffs position Sacks' and Lotan's incentives as tied to *Surgical Theater*'s success, not necessarily to Chen's.  Indeed, Chen allegedly took actions intended to harm Surgical Theater, and therefore, Sacks' and Lotan's financial stake.

As stockholders, Sacks and Lotan absorb Surgical Theater's costs and benefits the same as other investors.  If the Court accepted Plaintiffs' logic, every person with an economic interest in Surgical Theater would be interested—including Plaintiff Avisar himself. Sacks and Lotan are not interested due to their financial interest in Surgical Theater.

Second, as further evidence of Sacks' and Lotan's lack of disinterest, Plaintiffs point to Sacks and Lotan voting against investigating Chen's association with VIA amid reports of VIA microchip vulnerability to Chinese spyware.  Plaintiffs say that Avisar triggered the

---

[99] Doc. 1-2 at ¶¶ 105, 107.
[100] *McCall*, 239 F.3d at 817 (citing *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993)).

- 19 -

Case No. 1:23-cv-01980
GWIN, J.

board's duty to investigate at the July 25, 2022 board meeting to discuss the VIA microchip issue.[101]

Plaintiffs argue that Sacks' and Lotan's decision not to investigate the VIA microchip reports was so indefensible and egregious, that the two directors must have been acting due to pressure from Chen and in bad faith.[102]

Recall, Surgical Theater did not purchase or use VIA microchips in Surgical Theater's products. VIA's only relation to Surgical Theater was that Chen had ownership interests in the two separate companies.

However, Plaintiffs say that, because an arbitration panel ordered VIA "to pay substantial damages to a business partner as compensation for supplying defectively designed computer microchips", Surgical Theater could face negative impacts.[103]

In making this argument, Plaintiffs do not allege the VIA microchip issues may have had any direct Surgical Theater impact. Rather, Plaintiffs apparently claim that the adverse VIA arbitration award raised "concern[] that damage to Chen and [his wife's] reputation in East Asia would further hinder Surgical Theater's ability to distribute its products in [Asia]."[104]

Plaintiffs appear to be suggesting that Sacks' and Lotan's decision not to investigate the VIA arbitration may have breached their duty of care recognized in *In re Caremark International Inc. Derivative Litigation* and subsequent cases.[105]

In *Caremark*, shareholders brought a derivative suit in the wake of a substantial criminal investigation about Caremark, a pharmacy company indicted for multiple felonies.

---

[101] Doc. 1-2 at ¶ 74.
[102] *See id.* at ¶¶ 123, 125.
[103] *Id.* at ¶ 71.
[104] *Id.*
[105] 698 A.2d 959, 960 (Del. Ch. 1996).

- 20 -

Case No. 1:23-cv-01980
GWIN, J.

The *Caremark* plaintiffs alleged that the directors "allowed a situation to develop and continue which exposed the corporation to enormous legal liability and that in so doing they violated a duty to be active monitors of corporate performance."[106]

The *Caremark* court held that, to succeed on a fiduciary duty claim in those circumstances, plaintiffs would have to show that the directors knew or should have known of occurring legal violations, and that the directors then took no good faith effort to prevent or remedy that situation.[107]

However, "Delaware courts routinely reject the conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so."[108]  "In other words, it is not sufficient simply to point out that the board's oversight fell short, even disastrously so.  Rather, the plaintiff must peer into the actual functioning of the board and identify either (1) a total failure to implement structures of relevant oversight or (2) a conscious decision not to rely on the structures that did exist by at least half of the directors."[109]

Plaintiffs' allegations that Sacks' and Lotan's treatment of the VIA microchip reports was due to Chen's undue influence are conclusory.  While Plaintiffs argue that Sacks' and Lotan's decisions might have been driven by improper considerations, Plaintiffs' allegations do not allow the Court to infer either way whether those decisions were driven by improper considerations or legitimate business reasons.

---

[106] *In re Caremark*, 698 A.2d at 967.
[107] *Id.* at 971 (noting that the *Caremark* test is "demanding" and the standard is "quite high").
[108] *Desimone v. Barrows*, 924 A.2d 908, 940 (Del. Ch. 2007).
[109] *Baier*, 2023 WL 1073188, at *8 (applying Delaware law).

Case No. 1:23-cv-01980
GWIN, J.

Plausibility requires more than pleading facts consistent with a board member's interest or lack of independence.[110]  The allegations must be enough to allow the Court to affirmatively infer that the board member was interested or lacked independence.[111] Plaintiffs' allegations do not allow the Court to infer that improper Chen influence, as opposed to legitimate business reasons, animated Sacks' and Lotan's decisions.

VIA is not materially involved in Surgical Theater's area of business, nor are the two companies financially connected, save Chen as their common connection.  The allegations do not suffice to disturb the broad discretion afforded to Sacks' and Lotan's decision-making by Delaware law.

There is no reasonable doubt that Sacks and Lotan could have responded independently and disinterestedly to Plaintiffs' demand.

### 5. Director Alon Geri

Geri and Plaintiff Avisar co-founded Surgical Theater together.[112]  Unlike with the other board members, Surgical Theater employs Geri; he is not a shareholder.[113]  As discussed, however, dependence on a company's success due to a personal financial stake does not make an interested person for demand futility purposes.

At the June 25, 2022 Surgical Theater board meeting about the VIA microchip news reports, Geri allegedly felt threatened by Chen's threat to sue Avisar.[114]  Geri asked Chen if he too should fear Chen taking legal action against him.[115]  These statements indicate that Geri at times stood in opposition to Chen, and is therefore independent.

---

[110] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[111] *Id.*
[112] Doc. 1-2 at ¶ 20.
[113] *Id.* at ¶ 120.
[114] *Id.* at ¶ 75.
[115] *Id.* at ¶¶ 75, 119.

Case No. 1:23-cv-01980
GWIN, J.

Plaintiffs say that after the meeting, Geri "f[e]ll in line" with Chen.[116]  However, the complaint does not allege with particularly how Geri did so.  So, for the purposes of demand futility, Geri is disinterested and independent.

*      *      *

At best, Plaintiffs sufficiently allege only one interested board vote out of eight.  So, Plaintiffs have not shown that demand is futile on the board.  Because Plaintiffs have failed to sufficiently allege demand futility, the Court **GRANTS** Defendants' motion to dismiss without reaching Defendants' failure-to-state-a-claim arguments.

**V.    CONCLUSION**

The Court **GRANTS** Defendants' motion to dismiss as follows:

- The Court **DISMISSES** Defendant HTC for lack of personal jurisdiction.

- The Court **QUASHES** service upon Defendant Chen.  Plaintiffs have **thirty (30) days** to perfect service upon Defendant Chen.  If Plaintiffs fail to perfect service within that time, the Court will dismiss Defendant Chen without prejudice.

- The Court **DISMISSES** the claims against Defendant BVI for failure to plead demand futility.

- If Plaintiffs intend to seek leave to amend their complaint, they must do so within **thirty (30) days** of this Order.

- To any motion for leave to amend, Plaintiffs must attach both their proposed amended complaint and a redline comparing the proposed complaint against the original complaint.  All Plaintiffs must also verify any amended complaint.

IT IS SO ORDERED.

Dated: June 3, 2024                    _s/     James S. Gwin_
                                        JAMES S. GWIN
                                        UNITED STATES DISTRICT JUDGE

---

[116] Doc. 1-2 at ¶ 120.